IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Patricia K. Wright, et al.,       )
                                  )
            Plaintiffs,           ) Case No. 1:10-CV-771
                                  )
    vs.                           )
                                  )
Bank of America, National         )
Association as Successor          )
by Merger to LaSalle Bank,        )
N.A. as Trustee for WAMU          )
Mortgage Pass Through             )
Certificates Series 2006-         )
AR19 Trust                        )
                                  )
                                  )
            Defendant.            )

O R D E R

This matter is before the Court on motions for summary judgment filed by Plaintiffs Glenn and Patricia Wright (Doc. No. 41) and Defendant Bank of America, National Association (Doc. No. 33). Also before the Court is Plaintiffs' motion for leave to amend their complaint. Doc. No. 46. For the reasons set forth below, Plaintiffs' motion for summary judgment is not well-taken and is **DENIED**; Defendant's motion for summary judgment is well-taken and is **GRANTED.** Plaintiffs' motion for leave to amend is not well-taken and is **DENIED.**

I. Background

Plaintiffs Glenn and Patricia Wright purchased a parcel of real property located at 7329 Waterpoint Lane, in Cincinnati, Ohio. Plaintiffs financed the purchase with a promissory note

given and secured the note by giving a mortgage on the property. Plaintiffs defaulted on the note and in February 2009, Bank of America initiated foreclosure proceedings against Plaintiffs in the Court of Common Pleas in Hamilton County. Complaint ¶ 7.

In September 2009, a state court magistrate found that Bank of America was entitled to summary judgment on its foreclosure claim, that the property should be sold by the Sheriff, and that the proceeds should be distributed among the Clerk of Court, the County Treasurer and Bank of America. The magistrate found that the amount due and owing to Bank of America was $649,007.48 plus interest accruing from August 1, 2008 at the rate of 5.978% per annum. Doc. No. 1-1, at 2-5. In October 2009, the common pleas judge entered an order adopting the magistrate's decision. Doc. No. 1-1, at 1. In December 2009, the Sheriff sold the property back to LaSalle Bank for $525,000. Doc. No. 1-1, at 7-8.

Plaintiffs vacated the premises at some point but left their personal property in the house. The record indicates that Plaintiffs received notice that Bank of America advised them to remove their belongings from the property. An official notice from Bank of America provided a deadline of April 8, 2010 to remove their things. Plaintiffs were also aware that inquiries were being made about what to do with their furniture well before the April 8 deadline. G. Wright Dep. at 86-87. In the meantime,

2

Glenn Wright approached Tim Atteberry, a Florida mortgage broker with whom he had done some business with in the past, with a proposal to buy back the Waterpoint Lane property.  The proposal, although not characterized as such, was along the lines of a land contract.  Atteberry would purchase the property with his own cash, with Plaintiffs providing a down payment of 20 to 25 per cent of the sale price.  Atteberry would retain title to the property and Plaintiffs would repay Atteberry the purchase price, presumably in installment payments.  Atteberry Dep. at 26-28.

Atteberry presented two offers to buy the property to Bank of America through a paralegal named Kate McCarthy.  McCarthy worked for the law firm Manley Deas Kolchalski, LLC, who represented Bank of America in the state court foreclosure proceedings.  Atteberry's first offer, made at around the first week of January 2010, was to buy the property for $425,000.  Atteberry Dep. at 75.  Atteberry renewed this offer on March 1, 2010.  Id. at 80.  Bank of America never responded to either of Atteberry's offers.  Id. at 82, 84.

Plaintiffs were well aware that they had been given a deadline of April 8, 2010 to remove their belongings from the Waterpoint residence.  G. Wright Dep. at 96-97, 113-14.  It is evident from the depositions that, despite the complete absence of a response to Atteberry's offers from Bank of America, both Glenn Wright and Atteberry believed that it was little more than

3

a formality for Atteberry to conclude the purchase of the property. E.g., Wright Dep. (Doc. No. 33-7), at 87-89; 114-115; 117-18; Atteberry Dep. at 97-98.

Apparently proceeding on the belief that the purchase from Bank of America would eventually be completed, on April 7, 2010, Glenn Wright and Atteberry had a conference call with McCarthy in which they requested that the Wrights be permitted to leave their personal property in the home.  McCarthy in turn checked with Bank of America and informed Atteberry that the Wrights could leave their belongings in the house.  She also sent Atteberry an email which stated in pertinent part:

> I just wanted to confirm our conversation with you.  I just confirmed with our client and the agent is aware the furniture is to stay in the property.  Like I said, the property preservation crew will likely change the locks and winterize (if necessary), but the furniture will be left in the property.  Our eviction file for this property should be closed later this week and you will be working with Tom Singer for the resale of the property.

Doc. No. 45-5.

Glenn Wright admitted that he never attempted to follow-up with Bank of America concerning the status of their personal property.  G. Wright Dep. at 123.  Instead, Wright apparently still believed that Atteberry was going to be able to successfully conclude the purchase of the property.  Id. Atteberry's deposition is clear, and Wright was aware, that Tom

4

Singer, listing agent for the property, was ignoring Atteberry and, in fact, would not take any of his calls.  Id. at 124-28.

In July 2010, Bank of America sold the property to Joseph and Tracy Heller for approximately $625,000.  The Wrights learned of the sale when they stopped by the house in August 2010 and found the Hellers living there.  Some of the furniture remained in the house with the Hellers; other property was discarded or donated to charity.  J. Heller Dep. at 27; T. Heller Dep. at 25-28.

In November 2010, Plaintiffs filed suit against Bank of America, asserting state law claims for breach of contract, negligence, and fraud.  These claims are all premised on Bank of America's alleged failure to keep and preserve Plaintiffs' personal property in accordance with the agreement allegedly reached between the parties on April 7, 2010.  The subject matter jurisdiction of the Court is based on diversity of citizenship in that the parties are citizens of different states and the amount in controversy exceeds $75,000.  Bank of America's second amended answer includes a counterclaim against Plaintiffs to recover the alleged deficiency in the state court foreclosure judgment in the amount of approximately $260,000.

Following the close of discovery, Bank of America filed a motion for summary judgment on Plaintiffs' claims.  Additionally, the parties have filed cross-motions for summary

judgment on Bank of America's counterclaim to recover the deficiency in its state court judgment.  These motions are now ready for disposition.

## II. Summary Judgment Standard of Review

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers.  The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts.  Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992).  Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute.  Anderson, 477 U.S. at 250.  The non-moving party "must

do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.  "If the evidence is merely colorable, . . . or is not significantly probative, . . . the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

### III. Analysis

#### A. Bank of America's Motion for Summary Judgment on Plaintiffs' Claims

Bank of America moves for summary judgment on each of Plaintiffs' claims.  The Court takes up these issues seriatim.

##### 1. Breach of Contract

Plaintiffs allege that on April 7, 2010, they entered into an agreement with Bank of America wherein they would be permitted to leave their personal property in the Waterpoint Lane

7

residence and that Bank of America breached this agreement by discarding their property or allowing it to be turned over to the Hellers.  Bank of America argues that it is entitled to summary judgment on this claim because no enforceable contract was formed between the parties concerning Plaintiffs' property because Plaintiffs failed to give consideration to support the agreement.  The Court agrees.

An enforceable contract requires an offer, an acceptance and consideration.  Carlisle v. T&R Excavating, Inc., 704 N.E.2d 39, 43 (Ohio Ct. App. 1997).  Consideration consists of either a benefit to the promisor or a detriment to the promisee.  Id.  Moreover, in order to constitute consideration, the benefit or detriment must be bargained for.  Id.  "Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."  Id.  Here, as Bank of America correctly argues, Plaintiffs failed to give Bank of America anything in exchange for its promise to allow them to keep their personal property in the Waterpoint Lane residence.  There was nothing more than a gratuitous promise, which is not enforceable as a contract, even if it is writing and evinces an intent to be bound.  Id.

Plaintiffs have not identified any evidence in the record that would constitute consideration to support an enforceable contract.  Plaintiffs contend that the consideration

8

was that Atteberry was in "ongoing negotiations" to buy the property and "that it was in everyone's best interest, including Bank of America, to continue those negotiations and to continue to maintain [their] personal property at the property." Doc. No. 45, at 6-7. This argument fails to establish consideration for at least two reasons.

First, Plaintiffs considerably overstate the matter in contending that Atteberry and Bank of America were in "ongoing negotiations" to buy the property. The record clearly establishes, as Bank of America points out, that Atteberry submitted two unsolicited offers to buy the property, and that Bank of America never responded to either offer, and indeed, that its listing agent refused to take Atteberry's calls. Far from being involved in "ongoing negotiations," the record in fact shows that Bank of America was completely disinterested in either of Atteberry's offers. Thus, even if the privilege of continuing negotiations to sell the property were sufficient to constitute consideration, the record shows that no negotiations over the property were taking place.

Second, the fact of "ongoing negotiations" is insufficient to constitute consideration because there is no evidence that Bank of America bargained for the "privilege" of continuing negotiations with Atteberry in exchange for its promise to allow Plaintiffs to leave their belongings in the

9

residence.  As already stated, by all appearances contained in the record, Bank of America was largely if not wholly indifferent to selling the property to Atteberry.

Bank of America is entitled to summary judgment on this claim.

### 2. Fraud

Plaintiffs also assert that Bank of America committed fraud by essentially reneging on its representation that their personal property could remain in the Waterpoint Lane residence.  Bank of America contends that it is entitled to summary judgment on this claim because Plaintiffs have failed to adduce evidence of intent to defraud and because Plaintiffs did not reasonably rely on McCarthy's representation about their belongings.  The Court agrees.

A claim for civil fraud consists of the following elements: (1) a representation, (2) material to the transaction, (3) made falsely, knowingly, or recklessly (4) with the intention of misleading another into a justifiable reliance on those facts, (5) that causes the other party injury.  Curran v. Vincent, 885 N.E.2d 964, 968 (Ohio Ct. App. 2007).

As Bank of America observes in its reply brief, Plaintiffs have wholly failed to point to any evidence that McCarthy intended to defraud them when she represented that they could leave their personal property in the residence.  Moreover,

Plaintiffs' reliance on McCarthy's representation was objectively unreasonable. Plaintiffs apparently interpreted McCarthy's representation as permission to leave their possessions in the residence indefinitely. At most, however, McCarthy's statement was premised on a belief that Atteberry would be successful in purchasing the property from Bank of America. It should have become evident to Plaintiffs at some point well before July 2010 that Bank of America was not going to sell the property to Atteberry. Bank of America never responded to either of Atteberry's offers, and Singer, the listing agent, would not even accept Atteberry's phone calls. Glenn Wright knew all of these facts. A reasonable person faced with these same facts would have realized that Bank of America simply was not going to sell the property to Atteberry and would have taken active steps to retrieve his belongings. Instead, Plaintiffs sat passively and did nothing to protect their interests. And, frankly, it was wholly unrealistic for Plaintiffs, having defaulted on the mortgage and owing a substantial money judgment to Bank of America, to believe that Bank of America would reward them for this behavior by selling the property to their proxy at a further substantial loss. Plaintiffs' reliance on McCarthy's representation was objectively unreasonable.

Bank of America is entitled to summary judgment on this claim.

3. <u>Negligence</u>

Finally, Plaintiffs allege that Bank of America negligently sold and/or discarded their personal property. Bank of America argues that summary judgment on this claim is appropriate because it is based on the same set of facts as Plaintiffs' breach of contract claim. Bank of America contends that because there was no enforceable contract between the parties, it had no duty to preserve Plaintiffs' property. The Court agrees.

A basic negligence claim consists of establishing the existence of a duty, a breach of the duty, and an injury proximately caused by the breach. <u>Jeffers v. Olexo</u>, 539 N.E.2d 614, 616 (Ohio 1989). In this case, according to Plaintiffs' pleadings, Bank of America's alleged duty to preserve their property was based on McCarthy's representation that they could leave their belongings in the residence. This representation, however, is also the basis for Plaintiffs' breach of contract claim. "Generally, the existence of a contract action excludes the opportunity to present the same case as a tort claim." <u>Textron Fin. Corp. v. Nationwide Mut. Ins. Co.</u>, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (quoting <u>Wolfe v. Continental Cas. Co.</u>, 647 F.2d 705, 710 (6th Cir. 1981)) (internal ellipses omitted). In order to base a tort claim on the same actions as a breach of contract claim, the plaintiff must demonstrate a duty that

12

existed independent of a duty created by the contract.  Id.  That is, the plaintiff must show a duty owed even if no contract existed.  Id.  In this case, Plaintiffs have not alleged or shown that Bank of America owed them a duty to protect and preserve their property outside of the duty created by the alleged contract between the parties.  Consequently, Plaintiffs' negligence claim fails.

Bank of America is entitled to summary judgment on this claim.[1]

---

[1] In their memorandum in opposition to Bank of America's motion for summary judgment, Plaintiffs allege for the first time that a gratuitous bailment was created when Bank of America permitted them to leave the property in the Waterpoint Lane residence.  Bank of America correctly argues that Plaintiffs may not raise this claim for the first time in answer to its motion for summary judgment.  Desparois v. Perrysburg Exempted Village Sch. Dist., ___Fed. Appx. ___, No. 10-3158, 2012 WL 104532, at *7 (6th Cir. Jan. 13, 2012).  Similarly, Plaintiffs have attempted to assert a claim for promissory estoppel in their memorandum in opposition and have filed a motion to amend their complaint to that effect.  Plaintiffs' motion to amend, however, comes well after the deadline established by the Court for amending pleadings and is not based on any newly-discovered evidence.  Additionally, Plaintiffs did not move for leave to amend until after Bank of America filed its motion for summary judgment.  Consequently, the Court will not entertain either of these claims, and Plaintiffs' motion for leave to amend is denied.  See Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999) (upholding district court's denial of leave to amend because plaintiff was aware of basis of claim for months prior to seeking amendment, the time for discovery had passed, dispositive motion deadline had passed, and a motion for summary judgment had been filed); Commerce Benefits Group, Inc. v. McKesson Corp., 326 Fed. Appx. 369, 376 (6th Cir. 2009) (same).  Plaintiffs' only justification for moving to amend their claims at this late date is that their new trial counsel, who entered an appearance after their original trial counsel was disbarred, discovered the basis for a promissory estoppel claim upon reviewing the depositions in

B. <u>Cross-Motions for Summary Judgment
on Bank of America's Counterclaim</u>

Bank of America has filed a counterclaim against Plaintiffs essentially seeking to enforce its state court judgment and more or less updating the amount allegedly due and owing to it due to the accrual of interest on the judgment.  In other words, Bank of America seeks a judgment on its state court judgment, a procedure previously approved by the Sixth Circuit Court of Appeals.  <u>See</u> <u>Berke v. Northcutt</u>, No. 84-5228, 1986 WL 17153, at *1-*2 (6th Cir. June 17, 1986) (holding that where diversity jurisdiction exists, district court has subject matter jurisdiction over claim that plaintiff has a judgment and defendant has failed to pay on that judgment).  Plaintiffs contend that they are entitled to summary judgment on Bank of America's counterclaim because, although the state court foreclosed the mortgage, it did not enter any money judgment against them.  Plaintiffs are incorrect, however.  The state court records submitted to the Court clearly indicate that the common pleas judge docketed an entry adopting the magistrate's decision finding that Plaintiffs owe approximately $649,000 plus

---

this case.  This justification is insufficient, however.  As stated, the factual basis for a promissory estoppel claim was known to Plaintiffs and their original counsel from the inception of this case.  Moreover, Plaintiffs' original counsel was not disbarred until discovery was almost closed and not until seven months after the deadline for amending pleadings expired.  Plaintiffs, therefore, have had more than an ample opportunity to amend their claims before now.

interest to Bank of America.  <u>See</u> Doc. No. 1-1.  This unquestionably was a "money judgment."  Moreover, the common pleas judge's entry confirming the sale indicates that the property was sold for $525,000.  Thus, Plaintiffs clearly owe Bank of America for the deficiency in that judgment.

Bank of America has moved for summary judgment on its counterclaim.  For the reasons just stated, Plaintiffs owe Bank of America for a deficiency in the state judgment.  Consequently, Bank of America is entitled to summary judgment on its counterclaim.

Accordingly, Plaintiffs' motion for summary judgment on Bank of America's counterclaim is not well-taken and is **DENIED.**  Bank of America's motion for summary judgment on its counterclaim is well-taken and is **GRANTED.**  The final pretrial conference of May 1, 2012 will be converted to a hearing to determine the exact amount of the deficiency Plaintiffs owe Bank of America through the date of the hearing.

**IT IS SO ORDERED**

Date April 3, 2012             s/Sandra S. Beckwith
                                    Sandra S. Beckwith
                        Senior United States District Judge